**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **G.T.**

**No. 21-0751** (Harrison County 21-JA-12-2)

**MEMORANDUM DECISION**

Petitioner Father J.W., by counsel Jenna L. Robey, appeals the Circuit Court of Harrison County's September 16, 2021, order terminating his parental and custodial rights to G.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Dreama D. Sinkkanen, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights and denying him post-termination visitation with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2021, the DHHR filed an abuse and neglect petition alleging that the mother tested positive for amphetamines, opiates, and THC upon admission to the hospital to give birth to the child. She also admitted to using fentanyl the day prior to the child's birth. Medical records revealed that the mother had only one prenatal visit. As to petitioner, the DHHR alleged that he was the child's putative father and was incarcerated at the time of removal. According to the guardian, petitioner's incarceration stemmed from convictions for breaking and entering and manufacturing/delivery of a controlled substance. The DHHR alleged that petitioner "knew that [the mother] was using drugs, [yet] failed to stop [her] use of illegal drugs while pregnant with his child." The DHHR further alleged that petitioner demonstrated the settled purpose to forego his

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

duties and parental responsibilities to the child. Petitioner thereafter waived his preliminary hearing.

The court held a series of hearings, ultimately culminating in an adjudicatory hearing for petitioner in June of 2021. By this point, petitioner had been confirmed as the child's father. Based on the evidence, the court found that petitioner was incarcerated on July 27, 2020, and was scheduled to see the Parole Board on July 1, 2021. Petitioner believed he would be granted parole and released no later than July 10, 2021. The court noted that petitioner had been incarcerated for the entirety of the child's life. The court further found that petitioner was presently unable to provide for the support and maintenance of the child, and was unable to assume the care, custody, and control of the child. Accordingly, the court found that petitioner acted in a manner that demonstrated a settled purpose to forego the rights, duties, and parental responsibilities to the child and had, in fact, abandoned him. The court adjudicated petitioner as a neglectful parent.

On July 21, 2021, the court held a dispositional hearing, during which the DHHR introduced petitioner's records from the West Virginia Department of Corrections and Rehabilitation and presented testimony from a DHHR worker. Petitioner then testified on his own behalf, indicating that he believed he would be released from incarceration in November of 2021. The court found, however, that petitioner's records indicated that he was not parole eligible until April of 2022 and had a projected discharge date of 2028. The court then found that since the initiation of the proceedings, petitioner had no contact with the DHHR and had not participated in services. The court further found that petitioner had never met the child; never provided him with any emotional, physical, or financial support; and had no bond with him. Finding that petitioner could be incarcerated for several years beyond disposition, the court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. The court further found that termination of petitioner's parental and custodial rights was necessary for the child's welfare, especially considering the child's young age, the adverse effects petitioner's behavior had on the child, and the child's need for permanency and stability. The court further denied petitioner post-termination visitation with the child "due to the tender age of the infant child and the utter lack of any bond between [petitioner] and the child brought about by [petitioner's] absolute absence from the child's life since birth." It is from the dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left

---

[2]The mother's parental and custodial rights were also terminated below. The permanency plan for the child is adoption in the current foster home.

with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that termination was inappropriate because the court erred in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the child's welfare. In support, petitioner asserts that he testified that he believed he would be eligible for parole in November of 2021 and that he would be compliant with services once released. Critically, however, this argument ignores the fact that the DHHR introduced evidence contradicting petitioner's self-serving testimony concerning his possible release from incarceration. As noted above, petitioner's records indicated that he would not be parole eligible until April of 2022 and could remain incarcerated until 2028. Ultimately, the court was free to weigh the credibility of petitioner's testimony in conjunction with the DHHR's probative evidence on the subject of petitioner's potential release, and we decline to disturb its findings on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Further supporting the circuit court's decision concerning the appropriate weight to afford petitioner's testimony, it is important to note that petitioner informed the court at an earlier hearing that he believed he would be released from incarceration in July of 2021, yet he remained incarcerated throughout the proceedings. As such, we find no error in the court's determination that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future.

Petitioner also argues that the court erred in finding that termination of his parental and custodial rights was necessary for the child's welfare because the child was placed with relatives and could have remained there indefinitely. We do not find this argument compelling, however, as we have explained that "[w]here parental rights have been terminated pursuant to [West Virginia Code § 49-4-604], and it is necessary to remove the abused and/or neglected child from his or her family, an adoptive home is the preferred permanent out-of-home placement of the child." Syl. Pt. 2, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Indeed, on appeal to this court, both respondents indicate that the child's permanency plan is adoption, which could not be finalized without termination of petitioner's rights. Further, as the court found, termination was necessary for the child's welfare because it would provide the one-year-old with stability and permanency. We agree, and find no error in this determination.

Having concluded that the court did not err in making these findings, we also conclude that termination of petitioner's parental and custodial rights was appropriate. Indeed, West Virginia Code § 49-4-604(c)(6) permits the termination of parental and custodial rights upon these findings. While petitioner believes that the less restrictive disposition set forth in West Virginia Code § 49-

4-604(c)(5), permitting a court to place a child in a temporary guardianship, would have been more appropriate, we do not agree. As this Court has long held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Further, we have explained that

> [w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3. On appeal, petitioner does not allege that the circuit court failed to comply with this directive, and our review indicates that the court undertook the necessary considerations. As such, we find no error in the court's termination of petitioner's parental and custodial rights.

Finally, petitioner argues that the circuit court erred in denying him post-termination visitation with the child. However, petitioner provides no evidence in support of this argument and does not otherwise challenge the court's finding that there was an "utter lack of any bond" between him and the child. We have previously explained that post-termination visitation is only appropriate when there is a close emotional bond between the parent and the child. Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995) (directing circuit courts in ruling on post-termination visitation to "consider whether a close emotional bond has been established between parent and child"). Because petitioner cannot establish a bond of any kind with the child, we find no error in the denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 16, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment